UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**DAVID WAYNE ELSWICK,**

       **Plaintiff,**

v.                                                                                                             **CIVIL ACTION 2:14-cv18358**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10), Brief in Support of Judgment on the Pleadings (ECF No. 13) and Plaintiff's Reply to Defendant's Brief in Support of Decision (ECF No. 14).

Background

Claimant's, David Wayne Elswick, application for disability insurance benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act was completed on February 7, 2011 (Tr. at 177-180) and application for supplemental security income (SSI) under Title XVI of the Social Security Act was completed on February 14, 2011 (Tr. at 181-189). In both applications, Claimant alleged disability beginning on October 1, 2010 (Tr. at 177, 181). The claims were denied initially (Tr. at 86-96, 107) and upon reconsideration (Tr. at 113-126). Claimant filed a Request for Hearing by Administrative Law Judge Summary on June 16, 2011 (Tr. at 127-129). In his request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that he disagreed with the determination made on his claim for Supplemental Security Income/Social Security benefits because the Decision was contrary to the medical evidence and

regulations. Claimant appeared in person and testified at a hearing held in Charleston, West Virginia on February 7, 2013 (Tr. at 27-80). In the Decision dated February 14, 2013, the ALJ determined that based on the application for a period of disability and disability benefits, the Claimant was not disabled under the Social Security Act. Further, the ALJ also determined that based on the application for supplemental security income, the Claimant was not disabled under the Social Security Act. On April 12, 2013, Claimed filed a Request for Review of Hearing Decision because the ALJ's Decision was contrary to the medical evidence and regulations (Tr. at 8). On April 17, 2014, the Appeals Council received additional evidence which was made part of the record (Tr. at 6). This evidence was listed in the Appeals Council's Exhibits List as Exhibit 14E Representative Brief from Jan Dils, dated April 12, 2013. On April 17, 2014, after considering Claimant's disagreement with the decision and the additional evidence made part of the record, the Appeals Council found no reason under its rules to review the ALJ's decision and therefore denied Claimant's request for review (Tr. at 1-7).

On June 13, 2014, Claimant bought the present action requesting this Court to review the decision of the defendant and that upon review, reverse, remand or modify that decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2014). If an individual is found "not disabled" at any

step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of October 1, 2010 (Tr. at 14). The ALJ found that Claimant meets the insured status requirements of the Social Security Act through March 31, 2015. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of peripheral vascular disease and status-post great left toe amputation. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment

3

or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 15). The ALJ then found that Claimant has a residual functional capacity to perform sedentary work[1] (Tr. at 23). As a result, the ALJ concluded that Claimant could perform jobs such as folder, assembler/arranger and document preparer (Tr. at 21). On this basis, benefits were denied (Tr. at 22).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not

---

[1] The ALJ ordered that Claimant could lift/carry twenty pounds occasionally and ten pounds frequently. He could sit for up to eight hours of an eight-hour workday and stand/walk for up to two of eight hours, but needs the ability to stand at the workstation for up to ten minutes each hour. He can occasionally use the left lower extremity but never use the right lower extremity for push or pull activities. He may frequently use the upper extremities for reaching and push/pull activities with no other functional limitation with his upper extremities. He should never climb ladders, ropes or scaffolding; but may occasionally balance, stoop, climb ramps or stairs, kneel, crouch and crawl. He should avoid all work around hazards such as unprotected heights and moving machinery and should avoid concentrated exposure to extreme cold and vibration (Tr. at 16).

supported by substantial evidence.

### Claimant's Background

Claimant is married and has a child who was six months old at the time of the hearing (Tr. at 48). He was placed in special education classes in school and required tests to be read to him (Tr. at 49, 63). Claimant completed the ninth grade and dropped out of school while he was in the tenth grade. He does not possess a driver's license. He failed the driver's license test twice even with the test being read to him both times (Tr. at 49-50).

### The Medical Record

The court has reviewed all evidence of record, and will address those portions which are relevant to the issues raised by Claimant.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in failing to perform the "special technique" analysis of Claimant's mental impairments (ECF No. 10). Claimant asserts that the ALJ failed to address his alleged mental impairments and failed to consider the combined effect of Claimant's physical and mental impairments. Additionally, Claimant asserts that the ALJ erred in assessing his credibility. Claimant avers that the ALJ failed to articulate specific and adequate reasons to support his credibility determination regarding Claimant's pain. Defendant asserts that the ALJ reasonably concluded that Claimant was not disabled. Defendant asserts that Claimant did not have a medically determinable impairment, therefore, the ALJ was not required to rate the severity or limiting effects of Claimant's alleged mental symptoms (ECF No. 13). Defendant asserts that substantial evidence supports the ALJ's assessment of Claimant's credibility.

### Discussion

The five-step sequential evaluation process applies to the evaluation of both physical and

mental impairments. 20 C.F.R. § 416.920a (a) (2014); 20 C.F.R. § 404.1520a (a) (2014). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2014). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2014). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2014). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2014). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2014). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2014). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2014). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2014). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching

>a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2014).

Claimant asserted both physical and mental impairments at the hearing before the ALJ. Claimant argued that his cognitive impairments and anger and behavioral issues were part of his disabling impairments (Tr. at 33). Claimant relied on school records to support his argument that he has cognitive impairments and testified about his anger and behavioral issues. Claimant also testified to having significant memory deficits (Tr. at 47-48).

Claimant cites to a South Carolina district court case, *Crocker*, *see infra*, which held that the ALJ failed to perform an assessment of restrictions in his daily activities, social functioning or concentration, persistence or pace as a result of his mental impairments[2] (ECF No. 10). The Court in *Crocker v. Astrue*, 2012 U.S. Dist. LEXIS 178207, (D.S.C. Nov. 14, 2012) stated the following:

>The Fourth Circuit has not addressed whether the ALJ's failure to comply with 20 C.F.R. § 404.1520a necessitates remand. Other circuits considering the issue are split on whether such a failure mandates remand or whether the error may be held harmless *See Shivel v. Astrue*, 260 Fed. Appx. 88, 91 (10th Cir. 2008) (finding the Appeals Counsel's failure to comply with 20 C.F.R. § 404.1520a required remand); *Selassie v. Barnhart*, 203 Fed. Appx. 174, 176 (9th Cir. 2006) (holding that ALJ's failure to document his application of the special technique was legal error), *and Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (holding that where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRT form and append it to the decision, or incorporate its mode of analysis into his findings and conclusions and a failure to do so requires remand); *with Rabbers v. Commissioner of Social Sec. Admin.*, 582 F.3d 647 (6th Cir. 2009) (finding that when faced with an ALJ's failure to employ the special technique, "a reviewing court need only ask whether the record indicates that the claimant's mental impairment would have ultimately satisfied the B criteria"); *and Lazore v. Astrue*, No. 5:07—276, 2010 U.S. Dist. LEXIS

---

[2] In *Crocker* the Court also found that the ALJ did not address whether the claimant had experienced any episodes of decompensation.

>103774, 2010 WL 3907769, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd by* 443 Fed. Appx. 650 (2d. Cir. 2011) (finding that ALJ's failure to document his findings specific to the four functional areas was harmless because the ALJ assessed in detail claimant's daily activities, ability to function socially and in the workplace, and his ability to maintain attention and concentration).

Defendant asserts that the present matter differs from *Crocker* because the claimant in *Crocker* had been diagnosed with anxiety and affective disorders by physicians based upon clinical findings (ECF No. 13). Defendant avers that Claimant "was not diagnosed with a mental impairment based upon clinical findings and was never treated for a mental impairment," therefore the ALJ was not required to assess the alleged severity or limiting effects of Claimant's subjective statements.

At the hearing, Claimant's counsel argued:

>I think there's definitely some questions regarding his memory, his ability to read and write, his ability to comprehend directions and apply them, and I think that perhaps if you're unable to find him fully disabled just based on the physicals, then maybe this is an individual we need to send out for psychological testing and cognitive testing. We have in the ninth grade, which is the last grade that he completed. We have records stating that his standardized tests reveal severe deficiencies in both reading and writing and he had low math skills as well, and that was his last year of formal education, so there's – I would draw presumption [ ] that he wasn't having any additional increases in his ability from that point which then again [was] eroding some of the jobs. And so in all, in all I just think there's definitely some major physical issues. There's definitely some mental issues, and that he would not be able to maintain any type of employment. (Tr. at 78-79)

School records admitted into evidence demonstrate that Claimant was enrolled in special education classes referred to as the "alternative program." The school records also demonstrate multiple disciplinary actions (Tr. at 283-284). Kanawha County Schools placed Claimant on an Individualized Education Program (IEP) (Tr. at 287-289). An IEP report dated June 10, 1997, stated that Claimant's behavioral problems at school mostly centered around fighting (Tr. at 294).

The IEP report reflects that "[Claimant] admits that he is supposed to be taking medication but does not do so, says he forgets it. Parent reports that family is no longer working with Shawnee Hills: since [Claimant] refused to take the medication[.] Shawnee Hills staff said there was nothing they could do to help him." (*Id.*)

Claimant did not assert any mental impairments on his application. At the hearing, Claimant testified that he could read simple words, but could not read Social Security notices and had relied on his wife or mother to read those to him. Claimant stated that his wife helped him complete Social Security forms (Tr. 62). He testified that he was able to complete his basic information on applications, but needed help with the rest of the application (Tr. 63).

Claimant asserted at the hearing and in his pleadings that he had anger issues and behavior problems in school (Tr. 64). He stated that he had anger issues and that he had had disagreements with two different supervisors at a previous employer, McDonald's, as well as supervisors at two other places of employment (Tr. 65-66). Claimant asserts that in assessing the effect of impairments, the ALJ must consider the combined effect of impairments, even if the impairments individually would not be severe. *Walker v. Bowen,* 889 F.2d 47, 49-50 (4th Cir. 1989); *Rainey v. Heckler*, 770 F.2d 408, 411 (4th Cir. 1985).

Substantial Evidence

Defendant asserts that Claimant did not indicate any mental symptoms in connection with his claim for disability until the administrative hearing. Defendant argues that "the record showed no evidence of a medically determinable mental impairment (ECF No. 13). Defendant asserts that Claimant "was not diagnosed with a mental impairment based upon clinical findings and was never treated for a mental impairment. Accordingly, the ALJ was not required to assess the severity or limiting effects of [Claimant's] mental complaints, nor could they provide a basis for disability

under the [Social Security Act]." (*Id.*)

In *Davis v. Astrue*, 2011 U.S. Dis. LEXIS 83200, (N.D. W.Va., July 28, 2011), the court remanded the decision to the Commission for reasons including "the ALJ neglected to resolve a crucial issue by failing to consider the numerous indications of the claimant's depression." Specifically, the ALJ failed to mention the claimant's mental impairments, which were diagnosed by his long-term treating physician. As a result, the court found that substantial evidence did not support the ALJ's findings regarding the claimant's impairments. The Commissioner argued that the claimant did not identify any mental impairments in any of his disability application materials, nor did he ever mention depression as a mental impairment. The Commissioner asserted that the ALJ had no duty to develop the record because the claimant did not have a severe mental impairment. The court found that "Although the [claimant] did not mention depression specifically at the hearing, he did state that he has a hard time sleeping and that he worries 'about everything and anything.' Additionally, there are multiple documents in the record that contain references to or allude to depression."

The court found that due to the documents in the record mentioning the claimant's depression, evidence was sufficient to place the ALJ on notice of the alleged mental impairment. "The ALJ cannot ignore evidence of a mental impairment in the record… When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. 404.1520a. *Id*., citing *Calcek v. Commissioner of Social Security*, No. 3:CV-01-1664, 2003 U.S. Dist. LEXIS 13564, 2003 WL 21911069, at *5 (M.D. Pa. July 31, 2003) (citing *Plummer v. Apfel,* 186 F.3d 422, 432-422 (3rd Cir. 1999)).

The court remanded the matter to the Commissioner for further action asserting "[T]he fact

that [claimant] did not cite depression as a basis for disability is not dispositive of the issue of whether [the ALJ] had a duty to investigate the possibility that [claimant] was disabled by a mental impairment." See *Prentice v. Apfel*, 11 F.Supp. 2d 420, 426 (S.D. N.Y. 1998). The *Davis* court further stated:

> Where the claimant has presented a colorable claim of mental impairment, as here, the failure to incorporate the special technique [as described in 20 C.F.R. 404.1520a(b)-(e)] into the ALJ's decision warrants remand for further proceedings. *Sparrow v. Astrue*, No. 4:09-CVV-143-D, 2010 U.S. Dist. LEXIS 85651, 2010 WL 2910013 (E.D. N.C. June 29, 2010); see also *White v. Barnhart*, 321 F. Supp. 2d 800, 804 (N.D. W.Va. 2004) (holding that because the record contains substantial evidence indicating the claimant suffered from anxiety and panic disorders with agoraphobia, the ALJ should have ordered a psychological examination and further developed the record with respect to the possibility of a mental impairment prior to rendering a decision.)

The court in *Davis* found that it "will not assume that the [claimant's] depression is too minor to have an effect on the ALJ's decision. 'The determination as to the severity and effect of an impairment is to be made by the ALJ rather than by a court on judicial review.' *Graves. Astrue*, No. 2:07CVV306, 2008 U.S. Dist. LEXIS 73356, 2008 WL 4093726, at *4 (S.D. Miss. Aug. 27, 2008)."

Claimant's IEP records reflect the following:

- February 21, 1990: Kanawha County Schools' Specific Learning Disability Evaluation Team Report Summary reflects that a specific learning disability may exists which requires specifically designed instruction (Tr. at 348-349).

- January 31, 1996: David Elswick is a special education student at Dunbar Junior High. David has severe and chronic interpersonal relationship problems with peers, adults and people in authority. David has extreme behavioral difficulties with frequent verbal and physical outbursts. David's profanity, threats and total loss of control is frequent. David is currently committed to Highland Hospital, a commitment initiated by the

school principal. This initiation was made following David's statement that he was going to kill someone at school and kill his father at home.

Because of the feelings David has toward the administration concerning his commitment and because of the threats directed toward Dunbar Jr. [High] students, David needs to attend Cabell Alternative School following his release from Highland [Hospital]. It is felt by the SBAT [School-Based Assistance Team] that David should not return to Dunbar Jr. High (Tr. at 321).

The Kanawha County Schools' Parent Information Report reflects that Claimant takes medication for Attention Deficit Hyperactivity Disorder, ADHD (Tr. at 340).

A recommendation for alternative placement from the Office of Exceptional Students reflects that Claimant was placed in special education [classes] and that he received out of school environment instruction while at Shawnee Hills (Tr. at 345).

- September 12, 1996: David met with the student support committee to consider his return to school[.] David admits that he is supposed to be taking medication but does not do so, says he forgets it. Parent reports that family is no longer working with Shawnee Hills:[3] since David refused to take the medication Shawnee Hills staff said there was nothing they could do to help him (Tr. at 303).

  David is not ready to return to school setting. Parents report that he still has violent outbursts at home. David states he does not know whether he can maintain his behavior in school. He will remain in out of school environment placement for a semester. Review after he turns 16. David will receive instruction through OASIS (online computer program) (Tr. at 318).

- February 7, 1996: Dunbar Junior High School recommended that when Claimant exited Highland Hospital, his needs would be best met in the Cabell Program.

- December 13, 1996:[4] David moved from Putnam to Kanawha

---

[3] Shawnee Hills Inc. was a mental health hospital which ceased operations in 2002 after filing for Chapter 7 bankruptcy. Http.//www.dol.gov/ebsa/newsroom//2011/11-141-PHI.html.

[4] On December 13, 1996, Claimant, his mother, a special education teacher, homebased therapist and Shawnee Hills Intensive Outpatient (Services) met and agreed on Claimant's continuation of all four major subject in special education under the Kanawha County Schools' IEP (Tr. at 330).

> County this fall. He has had behavioral difficulties in the junior high setting. He gets very angry and is unable to control his anger. He is violent, threatens other students and makes racial remarks to other students (Tr. at 303, 313).
>
> David has been at Highland Hospital.[5] The school obtained a mental hygiene warrant against David [that] stated he might harm someone. He has made threats to harm other students at school.
>
> Following his release from Highland [Hospital], David has been attending the Shawnee Hills IOS program [Intensive Outpatient Services]. He has been difficult to maintain in that program also. He gets violent and makes threats. [H]e has thrown chairs and his anger often cannot be controlled (Tr. at 332, 330).

- David's behavior in a school setting has been threatening of the students. He is currently a danger to himself and others in a school setting. At this time a homebound placement is appropriate for his academics. Consideration of return to a school after completion of nine weeks of homebound if he meets with the homebound teacher. Consultation with any agencies, such as Shawnee Hills, that is working with David (Tr. at 337).

In an attempt to justify the ALJ's failure to assess the alleged severity or limiting effects of Claimant's mental impairments, Defendant asserts the following:

> [T]he record indicates that Plaintiff did not seek any mental health treatment, and reported no mental symptoms to his treating sources. Plaintiff denied anxiety and depression to his treating physicians (Tr. 387-403). Moreover, his treating sources documented normal mental health status findings including that he was alert and oriented to time, place, and person, and his mood and affect were appropriate (Tr. 387, 404, 473, 561, 567, 576). Further, Plaintiff was neither prescribed psychotropic medication nor received any other mental health treatment. On questionnaires completed for his treating physician, Plaintiff indicated that he had no barriers to learning, and he learned best from verbal instructions and demonstration (Tr. 558, 581). (ECF No. 13).

Based on the above, this Court proposes that the presiding District Judge find that the ALJ's

---

[5] Highland Hospital provides intensive psychiatric/mental health inpatient services for adults, adolescents and children. Services provided are guided by a master treatment plan guided by an interdisciplinary team of mental health professionals. Http://www.highlandhosp.com

decision was not supported by substantial evidence because there is sufficient evidence of a mental impairment to place the ALJ on notice. Therefore, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. 404.1520a.

Duty to Develop

Plaintiff asserts that in *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the court stated that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford*, 734 F.3d at 295. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id*. (quoting *Florida Power & Light Co. v. Lorion*, U.S. 470, U.S. 729, 744 (1985) (ECF No. 14).

In *Cook v. Heckler*, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id.* The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. *Id.*

Consistent therewith, the regulations at 20 C.F.R. § 404.1517 (2014) provide that

> [i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. § 404.1512(a) (2014). Thus, Claimant is responsible for providing medical

evidence to the Commissioner showing that he or she has an impairment. *Id.* § 404.1512(c). In *Bowen v. Yuckert*, *infra*, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

In *Guffey v. Chater*, Civil No. 2:96CV255, 1997 U.S. Dist. LEXIS 14513 (W.D. N.C. August 7, 1997), the court held that:

> [A] consultative examination is not required in every case. The ALJ must develop "evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists. Social Security Ruling 82-62; see also, 20 C.F.R. §§ 404.1512(f), 404.1519a, 416912(f), and 416.919a (a consultative examination is necessary only if the evidence is insufficient to make a determination of disability).
>
> How much evidence must a claimant adduce in order to raise an issue requiring further investigation? . . . The starting place must be the presence of some objective evidence in the record suggesting the

>existence of a condition which could have a material impact on the disability decision requiring further investigation. . . . Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment. . . . The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment. Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development . . . . In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record. *Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997) (internal citations omitted); accord, *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment.").

*Guffey* differs from the present matter because the record in *Guffey* did not contain any clinical reports of emotional difficulties or problems and was limited to the claimant's subjective complaints. In the present case, Claimant's school records are admitted as evidence. The school records reference treatment from two mental health facilities, Highland Hospital and Shawnee Hills. Claimant's counsel identified his alleged mental health impairments at the hearing before the ALJ which was sufficient to raise a suspicion that would warrant the ALJ ordering a consultative examination. Moreover, Claimant's counsel asserted that "we need to send out for psychological testing and cognitive testing" (Tr. at 78).

This Court proposes that the presiding District Judge find that Claimant demonstrated enough objective evidence to remand the case to the ALJ and order a consultative examination be performed regarding Claimant's alleged mental impairments.

Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **GRANT** Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10), **DENY** the Defendant's motion filed on November 24, 2014 (ECF No. 13), **REVERSE** the final decision of the Commissioner, **REMAND** this case for further proceedings pursuant of 42 U.S.C. §405(g) and **DISMISS** this matter form the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 24, 2015

Dwane L. Tinsley
United States Magistrate Judge